The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, we'll begin with our third case. Is it Ms. Remy? How do I pronounce it here? It's Remy, Your Honor. Ms. Remy, we'd be pleased to hear from you. Thank you. Good morning and may it please the Court. My name is Julie Remy. I Kessler, III. Mr. Kessler challenges the validity of the Probation Office's Computer and Internet Monitoring Program Participation Agreement, which imposes a multitude of directives that amount to new conditions of release that substantially restrict his use of computers and the internet beyond the conditions set by the Court. Does Special Condition 3 still apply? I would argue that it was effectively nullified by the Court. Where did that happen? It looks like it still applies. I didn't see the Court removing it, and at the hearing, the Court certainly talked like it applied. So where did it, where can I find in the record that it was removed? It does still appear in the, in the JOC. Okay, so it still applies to him? It is still there. However, I think we have to look at other things that have happened, such as, for example, because that condition says that there, he is not to use any computers except for purposes of employment. Without probation's permission? Without probation's permission, correct. However, we've also got the Court telling Mr. Kessler that he's allowed to view pornography, which has nothing to do with employment. It's that, which is also consistent with statements that the Court made at the hearing, which, when you compare them to the assertion that, that Condition 3 still applies, becomes very confused for me and certainly for Mr. Kessler. He has Special Condition 3, and then he says, I want to use a computer for school. And so probation says, we will approve that, right? Special Condition 3 requires us to approve uses. We approve that use, but we want the Court to impose two more conditions, which the Court does. Says, if you're going to use a computer, and they've allowed you to use it for school, there's two more conditions. So now he has three, plus all the other conditions, but he has these three about computer use, right? And probation still has to approve uses beyond employment. They have approved the use, to use it for school. And then in response to your objections, the Court noted that it didn't feel like it could legally prohibit him from looking at certain things on the Internet. Correct. That is correct. And the Court also said to Mr. Kessler, trying to make clear to him what the parameters were, said to him, and the starting point should be an assumption that he has only authorized to the most limited use of the computer to conduct broad Internet searches on topics that are not illegal, to engage in email communications with other persons on topics that are not illegal. He can go into that with this. So how many conditions now are there that are, as a result of these revised, supervised release conditions, how many conditions are there to which Mr. Kessler is now subject? I'm not sure I completely understand the Court's question, but is the directives? Yeah, there's about 25 of them, and about a third of those are being challenged as overbroad. I'm sorry. A third of the, okay, but theoretically there were the 25 conditions. Okay. Has there been any Article III review of these revised conditions? No, we would argue that there hasn't. And we were asking the Court on March 1st to exercise some control over the probation office, and that's because we saw some clear problems with the directives contained in that agreement. I find this case so confusing, sort of the posture we're in. It looked to me like at the 2021 hearing, right, it's a revocation judgment, finding your client responsible for using marijuana, and just restoring the prior supervised release terms and conditions. And then you said, or counsel said, well, there's going to be some challenges. Yes. And so I was like, assuming you'd be back in district court with some challenges, but that's not what happened. Instead, you came straight to us with the challenges, and I don't understand how that works. Well, the Court- It's just like an informal colloquy you had at the end of this revocation proceeding, where you sort of anticipated some challenges that might someday be brought, and then you brought them here for the first time. Well, it was kind of a unique way how this all developed. I mean, Mr. Kessler's not presented with this agreement until February 9th, 2022. This is right after we first appeared for the during the hearing on March 1st. And he's approached for the very first time with this list of directives. And the very first time that we had a chance to ever raise it with the district court was on March 1st. And it was introduced in the hearing as an exhibit during the hearing, and it was discussed. The Court referred to it as the contract. So why didn't you go back to the district court with a motion to modify or clarify or whatever you wanted? Well, I think that's where I was heading. However, the Court basically invited the discussion right then and there. And my view of it was that this was essentially would fall under Condition 13, which was just being reimposed by the Court, which is that Mr. Kessler must follow the instructions of his probation agent. And how we've raised this is that the probation office is really gone outside of its limits here. And we're begging the Court. Raise this in front of the district court. It just seems like the factual premises running around this case are very unclear. Like what exactly is being challenged? Where is this coming from? And had you raised this in front of the district court, we'd have like a record that would explain, is this about that general listen to your PO condition? Or is this actually under Condition 3? Like all of this could have been clarified at the district court level. Well, we very clearly challenged the agreement to the Court right there at the end of the hearing on March 1st. The Court was very aware of what we were talking about. You think the challenge you're bringing now was squarely before the district court, the delegation challenge, the overbreath challenge to something like nine conditions? You think all of that, the district court had that? Well, what we said to the Court was that there were challenges to what we believe were new conditions being set by the court, or excuse me, by the probation office, which I think does imply a delegation issue. And that there were certainly vagueness problems with, and as I said, we thought that there would be some difficulty complying because of such a vague terminology that's included in these directives. So what would be your objection to sending this back and raising the objections with directions that the district court look at the vagueness and overbreath challenges and the degree to which any kind of new conditions were actually tailored to the offense, or whether they went beyond the offense and take a look at the factors and the conditions under section 3583. We've made clear that the conditions have to be tailored to the offense. The problem I have here is that I think the probation officer just went wild. And he presented this individual with all these conditions and said, here, sign this. And so, you know, maybe got a signature, maybe not, but that's no substitute for hearing when somebody just, you know, shows you, take it or leave it. And there just has to be some article three input into this. I mean, probation officers play a big part in the scheme, and they certainly have some interstitial leeway. But I mean, the probation officer looked a bit like he was an article three judge. And, you know, that at a certain point, these are questions of degree, at a certain point, it becomes problematic. There are so many conditions here that almost, and they're so minute and everything that it would be hard for anybody to follow them. And what you'd likely have is a series of minor infractions, or maybe major infractions, but minor infractions. And I don't understand why this whole business couldn't be simplified. I mean, do you see my concerns with what happened? Yes, I agree with the court. And I think that the reason we're here now is because I tried to raise it with the district court. And the answer I got was essentially, Mr. Kessler is going to do what the probation office tells him to do. And that is why we brought it to this court. I thought the district court said something like, I think these are good conditions. These are, because this is a standard contract, if you're going to use a computer on probation, and the district court was familiar with it. And I think it said something like, I think these are a good idea. And then went through them when you made particular objections and took out, like we talked about the adult pornography, but then pointed out almost all of these either are exactly the sort of thing that got him in this position to begin with, like adding child porn on DVDs, peer-to-peer sharing, etc. Or they're tailored to prevent circumventing the monitoring. And the district court made a particular finding that he was a sophisticated computer user, knowledgeable with circumventing, right? So what's the problem here? And didn't the district court address it? I didn't hear any real answer to the questions or didn't see any real exercise of control by the district court in its response when it was challenged on March 1st, at the end of that hearing, to address, as was just discussed, a probation officer that really is out of control. These directives appear to be mounting. The probation officer didn't invent this. This is something that applies, this is a contract that applies to any probationer who uses the computer. The district court was familiar with it. The district court said, I think these are good conditions. They apply to making sure that the monitoring works, that it doesn't get circumvented, that you're not able to hide something from the monitoring, right? You have the one point about interactive sites, but it seems for this particular defendant, that's perfectly legitimate because he was previously convicted of contact sexual abuse offenses. No, he was not. His underlying offense, his state offense, wasn't that it? Yes, his state offense did not include the internet, is my understanding. There was a contact, but the underlying offense for this case did not involve contact with a minor. That really does get to the core of where this argument ultimately- That's why he was a registered sex offender, right? Because he had had multiple contact. I'm sorry, Your Honor. That's why he was a registered sex offender. I didn't represent him in the case that was- I can point you to the JA if you need to know where it is. It's at 25 and 33 on the sealed joint appendix. Well, I don't have any dispute that he was a registered sex offender and that the prior offense involved contact. I'm not disputing that. I don't believe it involved the internet. But the underlying offense for which he is under supervision was non-contact. And yes, it involved the internet. So I think that this would be the non-contact variety when we start talking about the propriety of a broad internet ban, which is exactly what the probation office is trying to do. Is this a standard form with respect to registered sex offenders that this is- Is this one-off or is this a standard form that's presented? I don't know. I think that it appears to be a standard form where some boxes will be checked for certain offenders. I didn't know until March 1st during the hearing which of these would apply. I asked the court that. I said to the court, I said, I don't know if all of these boxes are going to be checked. And the probation office chimed in and said, yes, every single one of these is going to be checked for Mr. Kessler to follow. And there's a chance because it seems to me that a lot of these conditions are obviously correct in light of the background here, not only as Judge Rushing points out, as he registered sex offense, but a lot of the conditions stem directly from the original sentence. And he pled guilty to downloading child pornography and he put an incognito device on his computer to discourage any kind of monitoring. And so there are a lot of these conditions that appear perfectly tailored to the offense. But, you know, I mean, you get this double-edged sword where the internet is indispensable to your client, but at the same time, it's a vehicle for carrying out these heinous criminal acts. So I'm not sure you would fare all that well before the district court. You might. Some of the conditions seem to me a bit vague and these conditions that are going to be perfectly valid, even if we revamp. So what's your response to that? This is not any kind of free pass. Correct. And if I may, I am over time. I can just have a few moments to respond to the question. There is certainly a narrow tailoring requirement. And, you know, I think the question that I have is that the usages that are targeted by the probation office through these directives, I mean, what evidence is there that the monitoring and inspection requirements don't resolve all of these concerns? So in other words, how does allowing Mr. Kessler to have usage of the internet and computers so that he can function in daily life, how does that hinder the probation office's ability to monitor his internet use and to exercise its authority to inspect any computers that he has? That would be the least restrictive means of controlling his behavior. And that's what the court did when it modified his conditions in a way that you feel are the most susceptible to vagueness and overbreath attacks. Well, as far as starting with the vagueness, we look at just a moment. There's actually more that are subject that are challenged to overbreath than vagueness. For example, six, may only access the internet or other online services by an account pre-approved and authorized by the probation office. Seven, may only access email accounts, instant messaging services, chat rooms, or other online environments which allow for user interaction by accounts pre-approved and authorized by the probation officer. Nine, shall not access any chat room or other online environment. These are extremely vague terms. They're broad terms. They're very vagueness, right? And the district court clarified that. The district court said, yeah, by this, I mean, he's not on the internet for entertainment. Any place that he wants to go, any sort of interaction, the district court said, is going to need probation approval. The court said, that's what these mean. The court clarified it. And by doing so, the court said, it's really broad, right? The court made it quite broad. Breath is not the same thing as vagueness, right? I recognize that, Your Honor. And I agree with that. But I think when you're using terms like other online services, user interaction, I mean, any internet activities. He's prohibited from using the internet except for work or school or apparently adult porn, unless his probation officer approves it. Well, certainly, I mean, the court will determine how it views that. Our argument here is that the modification effectively nullified condition three. And I think that it was vulnerable. It would have been vulnerable court order to nullify condition three. There was a court order. But did the court ever take condition? It didn't actually remove it. But I would say that had that July 2019 modification not been enacted, condition three would have been vulnerable to attack following Packingham. But that's not what happened, right? It's not what happened. But I can tell you that the way that Mr. Kessler has been managed up to this point, and in comparison with the comments by the court, that he's permitted to engage in broad internet searches that are not illegal, that he's allowed to have email communication about things that are not illegal, that along with telling him that he's permitted to view pornography and the way that he's been supervised up to this point, all indicate and send him the message that condition six and seven, the modification in July of 2009, did rescind three. So I understand what the court is saying. But functionally, in the way this has been played out, it's been very unfair to Mr. Kessler if that's the interpretation. I mean, if there's a confusion about what the... It just seems to me that if there's confusion about what the district court meant when he said these things, and what is the effect of that on condition three, it would have been really good to ask the district court to have the district maybe look at this before we get up here. I agree with what the court is saying, that yes, it could have been handled more cleanly. And the answer that I got from the court in response to the challenge that we made, which was clearly challenging the entire agreement and pointing out specific examples of what we thought were vagueness and overbreadth and delegation, it's all implicit in there. And the court basically said, yeah, I don't have a problem with them checking that box, because this is the overall instruction to him. And then says, in the same breath, he can engage in broad internet searches that are not illegal. He can have email communication with individuals that are not illegal. That does not appear to be... Excuse me, I didn't mean to cut off. So you have three basic objections. One, I guess is a vagueness objection. Two is the overbreadth objection. And three would be a numerosity objection to just the sheer number. Am I correct that those are three points of attack? Yes, I think that that is fair. I mean, there's about 25 of these things, and at least half of them are challenged. And they're taken as a whole. These are extremely onerous conditions. And Mr. Kessler is on probation for the rest of his life, or on supervision. So that means that there needs to be the greatest justification for these conditions. And I don't think that that has actually been established in this case. Would your position be a bit stronger if you didn't have this history of this incognito device to discourage and prevent monitoring? I mean, the history here, not only with the original offense, but also you violated conditions that were previously put on you. So are we giving you a second bite at the apple? No, no, your honor. Let me clarify, please, the circumstances surrounding this incognito mode. First, the court found him not in violation of that. Incognito mode is essentially, it's not something that you seek out and install. I think it's available on virtually any Apple iPhone. It's just a toggle on and off. But we went to great lengths to demonstrate that there was instruction to Mr. Kessler to use that application because there were problems with people dropping into Zoom classrooms at Towson University where he attended. And so there were certain security applications that were put on their side. And that was a workaround that he was given. But he was found not to be in violation of that because his agent never advised him that he couldn't. In fact, what I asked the agent during the hearing was what essentially boiling down what the extent of the advice Mr. Kessler was given, and it was just condition six and seven. That was the question. Sorry, let me, you've got rebuttal time, but let me ask Judge Harris and Judge Rushing if they have further questions of you. No, thank you. No, thank you. Okay. Well, let's hear from Mr. Cunningham. Good morning, Your Honors, and may it please the Court, Michael Cunningham for the United States. If I may begin with the procedure, as Judge Harris's question sort of alluded to the why are we here, I think that the procedural posture of the case in the district court suggests that we shouldn't be here, that in fact, the appropriate forum in which to address these objections to the extent that any were preserved would be in the district court. On March 1st of 2022, Judge Berdar held a hearing to address the specific questions of whether there were violations to two petitions that had been submitted by the probation office. This was after we had held a proceeding on the 9th of February in which the parties had intimated to and agreed upon disposition that Judge Berdar rejected and informed the parties he wanted to have us return to the court and litigate the actual issues at stake. And after careful consideration of the testimony, he concluded that as counsel has indicated, the government had failed to meet the burden of preponderance of the evidence with respect to the allegation regarding the violation of the modified condition, or I should say the condition of supervision as it has been modified. Has counsel, has Judge Berdar taken a look at the present set of conditions? Has he, however, made 25 conditions and the vagueness and I apologize, sir. I didn't catch the first part of the question. I understood it had something to do with the 25 conditions in the contract. Has Judge Berdar, has Judge Berdar had the chance to look at the present set of conditions, all of the present conditions? Judge, the record as has been indicated is somewhat thin on that, but I would suggest that Judge Berdar did look at the contract. It was offered up by the appellant as an exhibit at the hearing below. And contrary to the assertion that there were any specific challenges to the 20-some, 25 actual conditions that are articulated in this form, I would submit, Judge, that by its very nature, it appears to be at least within the District of Maryland, a standard form. And by looking at some other cases, this court has heard specifically Cook, a form with very similar language and a similar name was used. So I would suggest that the form is... I'm asking you whether Judge Berdar has had a chance to look at the present set of conditions. I believe that he did, and it's reflected in the record, when he specifically invited counsel to address any of these forthcoming challenges. And I think that that in and of itself bears on the question of whether indeed there were objections that preserved for an appellate review other than plain air, because... What is your objection to remanding this case and getting the whole thing straightened out? The problem I have is that it's not in a clean kind of posture. And I'm not sure, I'm just not sure from this record exactly what conditions he approved of, what conditions he disapproved of, if any. I don't know how he resolved these vagueness and overrep challenges. I don't know that you have anything to be particularly afraid of on a remand because the conditions, a lot of them are tailored to the offense. A lot of them seem to be perfectly reasonable, but some of them do seem to be vague and overbroad. And what we're talking about is the rest of the individual's life under a set of conditions, it would be almost impossible to use the internet in a way without violating one or more of them. And what's wrong with just getting some Article III input into this because of the exact procedural history before in the district court is a little bit fuzzy. Judge, first of all, to respond to your last point there, I don't think that there's any problem with getting additional District III input to clarify things. I would certainly be remiss if I suggested that the district court would do some injustice by further considering this. But I think that the government's position in this is that Judge Berdar was very careful in his approach to this case. I mean, beginning with the fact that he actually listened and did not find Mr. Kessler in violation of Condition No. 1, respecting the misuse of the incognito. Okay, Judge Berdar is a very careful judge. At the present set of conditions and the vagueness and overbred challenges and the impact that the numerosity of the conditions is likely to have for the future, isn't it good to get a comprehensive opinion on these different conditions and a ruling on some of these challenges, some of these provisions? I don't think there's a strict vagueness and overbred analysis that should be applied to supervise release conditions. That strikes me as going too far. But it's just not clear to me exactly what he did consider and exactly what he did not consider. And it seems to me that the probation officer acted somewhat aggressive right outside the courtroom and say, here, take it or leave it. Why not just clean the case up? Well, Judge, with respect to the comment about the probation officer aggressive, and I think earlier during counsel's argument, you used the term wild, I would respectfully suggest, Your Honor, that the probation officer in this case was not wild and contrary to Mr. Kessler's own stated opinion that she was out to send him back to jail. She actually did not recommend in the context of the violation, even if it had been a violation that encompassed the misuse of the incognito mode, she wasn't recommending in term of incarceration. All she was actually seeking in this case were essentially two things. One, an admonishment from the court, which shouldn't have been necessary. And two, in order to participate in sex offense related mental health counseling, which hadn't been part of the district court, the underlying district court's initial conditions of supervised release. Judge Berdar rejected that second request specifically because he had not found him in violation of a condition relating to the underlying crime involving access to child pornography, in this case, possession of child pornography. So I think it very clearly reflects Judge Berdar's care and carefulness and attentiveness to this court's admonishment as to how he's to conduct himself with respect to sentencing. He carefully went through the 3553A factors as they relate to this. He acknowledged that misuse of marijuana is relatively speaking, a very minor offense. And he considered the extenuation and mitigation as presented by the defendant. I would note that there was no comment, well, if I may strike that and say, go back. The probation officer had indicated that all of the particular provisions would apply. This particular form had been presented to the defendant and counsel three weeks prior to the March 1st proceeding. There was plenty of time to specify which of these conditions are offensive to you. Which of them do you think are overbroad and are vague or constitute an inappropriate delegation? I would note that most of the conditions impose a restriction on computer use and internet access unless there's some consultation with the probation office. And that's what this very court has counseled, that where there's an opportunity for the dialogue between an individual being supervised and the supervising probation officer, that actually obviates concerns about inappropriate delegation, vagueness. If in fact the defendant has a question or a concern that I want to do something that my probation officer is prohibiting me from doing, there is always the opportunity. What I'm thinking is maybe some of the concerns here can be alleviated by a simpler set of instructions. Maybe you can reduce the 25 to four or five with the emphasis being on seeking the approval of the probation officer and consultation with the probation officer. And because as I say, the vagueness and overbreadth analysis that we apply in normal First Amendment challenges seem to be a little bit relaxed, should be a little bit relaxed and you give the district court and probation officer broader latitude. But might it not be advantageous in these cases to take the 25 conditions or however many and reduce them at least to five or six that incorporate some of the very general points that you have made? You've actually given a pretty good summary of what a reduced set of conditions might entail. But the problem with having this many, 25, it's hard to say that there wouldn't be inadvertent violations. Now, they wouldn't be major violations and they wouldn't require major sanctions, but there are just a whole lot of tripwires here. Is it possible? Let me just ask you, is it possible to reduce the number of these and bundle them into five or six prohibitions with the emphasis upon the need to secure the probation officer's approval? Can this be presented in a more intelligible form? And in answering that question, keep in mind, would it make them more or less vague to combine 25 conditions into four or five? Thank you, Judge Rushing. I think that actually hits on a point that I would have responded to Judge Wilkinson's questions. First of all, Judge Wilkinson, I don't presume to have the expertise in the context of supervising individuals sufficient to say that, yes, they could absolutely reduce this. I actually think that the tension here, and if I can borrow something you said, is that the tension between creating a prolix code of Hammurabian proportions versus providing the sufficient kind of guidance so that supervisees are on notice as to what is prohibited. Again, I note that most of these conditions require consultation with the probation officer. And if there is a dispute, then there's an opportunity to present that to the district court. And is it correct that, I mean, there's been a lot of talk about 20-something. I thought only nine had been objected to in front of us in the opening brief. Is that right? That's correct. Actually, the brief specifies them. I would suggest that if you look to the district court, there wasn't even that. There was an objection to the one with respect to pornography, which, ironically, the defendant, as support for Judge Bredar's conclusion that here was a smart individual who was pretty savvy about computers, he knew about the Packingham decision from the Supreme Court before he even actually came on to supervision. And indeed, there is a dispute of fact as to whether or not he had seen this contract or the agreement prior to. The probation officer testified that both she and a colleague had gone through, well, yeah, I misspoke there. A colleague had spoken to Mr. Kessler before, while he was still in a halfway house, about how he would be supervised and certain things, during which time frame it came up that he would want to use the computer. And even when he was in the halfway house, they, the probation office, essentially, he signed a waiver of his right to a hearing and agreed to the modifications in 2019 that were actually presented to District Judge Garbus, but because he wasn't handling the case anymore, Judge Bredar actually signed the modification in 2019 that included the relaxation on his proscription for having and using computers and the internet. What about the present set of conditions? Did Judge Bredar sign anything with respect to all of the present set of conditions? No, he did not, Your Honor. And in fact, part of the- Wouldn't that be nice? Wouldn't it be nice to have him look at the present set of conditions and sign off on those? Judge, he imposed the same conditions of supervised release that were extant prior to the violation. And he was constrained in that respect because the violation that he found was only as to the use of marijuana. The government invited him to impose a condition involving the mental health counseling, and he specifically declined to do so because he felt that not having found a violation of the restriction on computer use and internet access, he wasn't therefore going to do anything with respect to those conditions of supervised release that were already in place. So I think that also constrains the scope of review in this case, because it really, it didn't raise anything at the District Court with respect to the conditions involving computer use and internet access. Well, I guess your colleague, I have, I know what you were saying, and I have given this way more thought than I wish I had. I hear what you were saying. He says, I'm just reimposing the same conditions that have always been in place, by which I think he must mean condition three, just no internet without PO approval. Your colleague, though, says, no, no, this list of 25 was imposed for the first time at that proceeding. That I believe is sort of the premise for why we are here, that no, these were imposed, this list of 25 pops up for the first time at this hearing in front of Judge were expected by probation, at least, to have been in place as of the modification in 2019. Now, unfortunately, COVID seems to have had an impact on this case, like probably so many other things that this court has dealt with. And indeed, to the extent that the probation officer acknowledged that typically before an individual is given computer access through the remote monitoring program, they would have the person sign this document in advance. Unfortunately, that didn't happen. Actually, the probation officer said it was because Mr. Kessler, the supervisee, was resistant to that. He didn't want it to impede his authority to access adult pornography, again, reflecting his knowledge of the Supreme Court decision and how it impacted. So, unfortunately, the probation office should have, at that time, probably gone to the court and said, here are the circumstances, we need clarification of this proposed modification. The modification was appropriate in light of Pakenham and the objectives of supervised release, not to thwart people in their ability to get back on their feet and move into being a productive member of society. But Kessler was resistant to what probation was trying to do to help him. And, at least according to the probation office, would say not only to her, but other people, that he thought it was her design to send him back. All right, so the answer that you're giving to my question is that, no, Judge Berdard did not sign off on the present set of conditions. He incorporated them by reference, Judge. He acknowledged when the probation officer said that they would all be signed, that that was part of where he saw things, what he perceived to be, the landscape moving forward. So, I would submit that he acknowledged that he- So, the answer is to whether he signed off, I mean, incorporating by reference in this, the question is whether he, the answer to the question of whether he considered these particular set of conditions and whether there was Article III input into this particular set of conditions, your answer is no. Your Honor, I see I'm over my time. May I take a moment to respond? Yes, absolutely. Your Honor, I think to the contrary, he did understand these conditions. He recognized the scope and breadth of them. He believed that they were appropriate, and he did consider them and include them in his decision. What evidence do we have from the record of that? Judge, at the conclusion of the hearing on March 31st, he addressed when counsel said that she expected there would be future challenges. He asked for specifics. He responded as to the one regarding adult pornography that, in fact, there would be no prescription on adult pornography. As to the general complaint of vagueness, he acknowledged that he had reviewed them and found them to be appropriate, given Mr. Kessler's history with supervision. Your Honor, unless you have any other questions, I submit. Let's hear further from Ms. Raymond. Yes, Your Honor. Is there a specific question that the Court has that it would like me to address? No. I do want to go back to this notion about the record and Ms. Miller, the probation agent, and when this was presented to Mr. Kessler. I think the record is very clear that it was presented to him for the first time on February 9th. She was asked by the Court whether or not she had gone over that contract with him. She essentially responded, and this was on February 9th when we were standing outside the courtroom. Certainly, she seemed to agree with that during the hearing. It was first presented to him on February 9th of 2022. The other point that I wanted to respond to is that when I brought the challenges and the way I said it to the Court, I think it was very clear to the Court that I was challenging more than just specific examples that were discussed. I said there are a number of challenges here, there are a number of problems here that I see. The response that I received from the Court I took to be a response to all of those objections because there is such similar language in each of these separate conditions that we're claiming are vague. I mean, a lot of them kind of say the same thing or they could be read to say the same thing, just using slightly different terminology. So, they're very, very similar, and that was taken to be really the answer for many of those very similar conditions. Can I just repeat my question? What Article III input was there by Judge Bredar into the present set of conditions? I've given you an idea. Well, the previous hearing incorporated them and they were incorporated by reference in the previous hearing, took care of it all, and this really isn't much of a modification. What input, what Article III input was there into the present? I missed sort of the end of the Court's question, but as far as, the Court did not have anything to do or these conditions, this monitoring agreement was not presented to the Court until March 1st. It was never brought up, raised at the February 9th, 8th hearing because it wasn't presented to Mr. Kessler until after we walked out from that after the Court, that hearing was concluded. And so, the Court's weighing in and consideration of these directives is limited to what we see in the record from the March 1st hearing, which was a paragraph, essentially, of a response that really, I think, failed to address the core concerns that we're presenting here, which is the overbreath, the vagueness, the clashing with and Ellis and Hamilton as decided in this Court. And so, I think the Court does need to go back and look at these things. And I think it's right to remand it. I'm sorry, can I just ask, so in terms of Article III input, and maybe this is about your delegation challenge, which we haven't talked about much today, but that is one of your challenges. And I mean, the general rule, right, is that you don't need Article III input, but the Article III input came in, I know you don't think Condition 3 is still operative, but it's right there in the judgment. So, let's assume for a minute it's operative. There's your Article III. I'm delegating to the Probation Office what sorts of conditions ought to be imposed here. And obviously, if they are challenged in Court, then you want an Article III resolution of that challenge, but it's not as though a judge automatically has to sign off on it because Condition 3 exists? Well, I mean, a judge entered that condition that you have to get PO's approval in order to use the Internet. So, there was an original Article III delegation. So, maybe this is just what you were trying to say is that that delegation was too broad to justify these 25 conditions. Why do we need additional Article III review now, if that was a legitimate delegation? Because I think the Court does need to consider the core issue here, which is that the Probation Office is essentially trying to ban, it appears, Mr. Kessler from accessing and using the Internet. That clashes head-on with Packingham and Hamilton and Ellis. The Court has never considered that. And I think it has to in this case. And so, you know, whether this is, you know, I've raised this as a Condition 13, you know, followed... I mean, Judge Harris is pointing out that neither our court nor any other court that we're aware of, we've said, has ever reversed a condition where a court says no Internet without Probation Office's approval. No court has said that that condition is an impermissible delegation. We've approved of that condition numerous times. Do you disagree with that proposition? As an impermissible delegation? Well, the Court would be setting the condition, the restrictive condition. And so... That's what happened here. There's a condition that said no Internet without the Probation Office's approval. And that's the delegation. And then probation approves certain things, adds certain conditions. And as Judge Harris is pointing out, if you have a problem with certain conditions, you can raise them. But the Article III review has happened, right? It happened in 2012, before Packingham has decided, before this list of 25 directives ever exists and is ever presented to Mr. Kessler. And we've said that's not an improper delegation. You said that the... Well, I mean, my focus here is on the directives, right? Now... So that is not an improper delegation. The directives? Giving the probation officer the authority to approve or disapprove Internet access is not an improper delegation. No, I agree that this Court has said that the Probation Office can make those kinds of determinations. However, in every case where that's happened, there has been a situation... This is where we just disagree and the Court's going to decide how it's going to decide it, whether or not the modification in July of 2019 has effectively rescinded III. Because if it did, that changes everything. If it didn't, which it sounds like the Court is interpreting it that way, well then, yeah, I think this would be consistent. I'll concede it, that would be consistent with the prior cases where, and it was Comer, where the Court has said that, yeah, probation officers can get involved in making those access determinations. And in each one of those cases, Comer, Bush, Halverson, it was all a situation where the Court had set a restrictive condition and the probation agent was simply allowed to determine when exceptions might apply. Now, I will concede that where we stand right now, that would be permitted if Condition 3 was not rescinded. And I see that it appears in the paperwork. I see... I appear that it's in the document. But the way that Mr... And I think this does come back around to some fairness that I think has to be considered here, because the way that Mr. Kessler has been managed up to this point has certainly not been in line with no internet access, but for your agent's approval. It's been much looser than that. And it's really in a way that lends itself to an interpretation that 6 and 7 undid, that essentially nullified 3. And then you've got... So is the point that you're making, there can be a proper delegation, but at the same time, the situation would call for at least the exercise of the delegation. Delegation. In other words, is that what would be a proper delegation or they can... Let's say there's no improper delegation, but that doesn't necessarily preclude the fact that the exercise of the delegation should be open to challenge when a court thinks that there may be some basis for the challenge. Yes. Do you see what I'm saying? You don't need to raise an improper delegation necessarily to hold that if there is a basis or some basis for a challenge in the exercise of the delegation, that it should be heard. Yes. All right. Is there anything further? I have nothing further. Does the court have any other questions for me? Thank you for your time. All right. Thank you.
judges: J. Harvie Wilkinson III, Pamela A. Harris, Allison J. Rushing